## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| ALLIANT CPA GROUP, LLC, individually and on behalf of a class of similarly situated businesses and individuals,<br><br>    Plaintiff,<br><br>    v.<br><br>BANK OF AMERICA, CORP., BANK OF AMERICA, N.A., AMERIS BANK, BANK OZK, CADENCE BANCORPORATION, CADENCE BANK, N.A., CENTERSTATE BANK CORPORATION, CENTERSTATE BANK, N.A., NEWTON FEDERAL BANK, SYNOVUS BANK, TRUIST FINANCIAL CORP., TRUIST BANK, UNITED COMMUNITY BANK, INC., UNITED COMMUNITY BANK (GEORGIA), WELLS FARGO AND COMPANY, AND WELLS FARGO BANK, N.A.,<br><br>    Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff **Alliant CPA Group, LLC,** brings this class action complaint on behalf of themselves and those similarly situated (hereinafter "Plaintiff") against Defendants Bank of America, Corp., Bank of America, N.A., Ameris Bank, Bank OZK, Cadence Bancorporation, Cadence Bank, N.A., Centerstate Bank Corporation,

Centerstate Bank, N.A., Newton Federal Bank, Synovus Bank, Truist Financial Corporation, Truist Bank, United Community Bank, Inc., United Community Bank (Georgia), Wells Fargo and Company, and Wells Fargo Bank, N.A. (hereinafter "Defendants") to stop Defendants' unlawful conduct and to obtain monies owed as a result of Defendants' conduct. For its class action complaint, Plaintiff alleges as follows based upon its knowledge and upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.     Plaintiff, Alliant CPA Group, LLC ("Alliant") is a Georgia limited liability company, organized and authorized to do business, and doing business, in the State of Georgia since July 2006. Alliant provides up-to-date, responsive and trustworthy advice that helps business be successful with their tax, accounting, and general business consulting needs. Partner, Jeff Schwind, is a licensed CPA in good standing since 1991. Alliant is located in Marietta, Georgia.

2.     Upon information and belief, at all relevant times, Defendant Bank of America, Corp., ("BAC") is a Delaware corporation and the parent company of Bank of America N.A.  BAC is an American multinational investment bank and financial services company and headquartered in Charlotte, North Carolina. Through its subsidiaries, BAC conducts substantial business within this District.

2

3.      Upon information and belief, at all relevant times, Defendant Bank of America, N.A., ("BofA") is a federally chartered bank and is a subsidiary of BAC. BofA is headquartered in Charlotte, North Carolina and conducts substantial business within this District.

4.      At all relevant times, Defendant Newton Federal Bank ("Newton") is a federally chartered bank. Newton is headquartered in Covington, Georgia, and conducts substantial business within this District.  Affinity Bank is a division of Newton and also operates within the state of Georgia.

5.      At all relevant times, Defendant Ameris Bank ("Ameris") is a Georgia state-chartered bank and is headquartered in Atlanta, Georgia.  Ameris conducts substantial business within this District.

6.      At all relevant times, Defendant Bank OZK ("OZK"), also known as Bank of Ozark, is an Arkansas state-chartered bank and is headquartered in Little Rock, Arkansas. OZK conducts substantial business within this District and has numerous branch locations throughout the state of Georgia.

7.      Upon information and belief, at all relevant times, Defendant Cadence Bancorporation, ("Cadence") is a Delaware corporation and the parent company of Cadence Bank, N.A. Cadence is headquartered in Houston, Texas. Through its subsidiaries, Cadence conducts substantial business within this District.

8.     At all relevant times, Cadence Bank, N.A. ("Cadence Bank") is a national bank association charted under the law of the United States, and is a subsidiary of Cadence. Cadence Bank is headquartered in Atlanta, Georgia. Cadence Bank conducts substantial business within this District.

9.     At all relevant times, Defendant Centerstate Bank Corporation, ("Centerstate") is a Florida corporation and is headquartered in Winter Haven, Florida.  Through its subsidiaries, Centerstate conducts substantial business within this District.

10.     At all relevant times, Centerstate Bank, N.A. ("Centerstate Bank") is a national bank association charted under the law of the United States with its primary and is a subsidiary of Centerstate.  Centerstate Bank is headquartered in Winter Haven, Florida, and conducts substantial business within this District.

11.     At all relevant times, Truist Financial Corp., ("Truist") is a North Carolina corporation and is headquartered in Charlotte, North Carolina. Through its subsidiaries, Truist conducts substantial business within this District.  In December 2019, BB&T Corporation and SunTrust Banks, Inc. merged to form Truist.

12.     At all relevant times, Truist Bank, ("Truist Bank") is a North Carolina corporation and is headquartered in Charlotte, North Carolina.  Truist Bank is a subsidiary of Truist, and conducts substantial business within this District.

13.     At all relevant times, Defendant Synovus Bank, ("Synovus") is a Georgia state chartered bank and is headquartered in Columbus, Georgia.  Synovus conducts substantial business within this District.

14.     At all relevant times, Defendant Wells Fargo and Company ("Wells Fargo") is a Delaware corporation and is headquartered in San Francisco, California. Through its subsidiaries, Wells Fargo conducts substantial business within this District.

15.     At all relevant times, Defendant Wells Fargo Bank, N.A. ("WF Bank") is a national bank association charted under the law of the United States with its primary place of business in Sioux Falls, South Dakota. WF Bank provides Wells Fargo personal and commercial banking services, and is a subsidiary of Wells Fargo. WF Bank conducts substantial business within this District.

16.     At all relevant times, Defendant United Community Bank, Inc. ("UCB") is a Georgia corporation and is headquartered in Blairsville, Georgia.  UC Bank conducts substantial business within this District, as well as through its subsidiary United Community Bank (Georgia).

17.     At all relevant times, Defendant United Community Bank (Georgia) ("UC Bank") is a Georgia state charted bank and is headquartered in Blairsville, Georgia.  UC Bank conducts substantial business within this District.

18.     In this Complaint, when reference is made to any act of any Defendant, such shall be deemed to mean that officers, directors, agents, employees, or representatives of the Defendant named in this lawsuit committed or authorized such acts, or failed and omitted to adequately supervise or properly control or direct their employees while engaged in the management, direction, operation or control of the affairs of the Defendant and did so while acting within the scope of their employment or agency.

## JURISDICTION AND VENUE

19.     The Court has original jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. §1332(d), because this is a class action in which (1) at least some members of the proposed Class have different citizenship from Defendant(s); (2) the proposed class consists of more than 100 persons or entities; and (3) the claims of the proposed members of the Class exceed $5,000,000 in the aggregate.

20.     This Court has personal jurisdiction over Defendants because Defendants do business in this District, and a substantial number of the events giving rise to the claims alleged herein took place in Georgia.

21.     The venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the alleged claims

occurred in this District given that Plaintiff applied for the PPP loans while in this

District and Defendants, marketed, promoted, and took applications for the PPP

loans in this District.

## FACTUAL ALLEGATIONS

### Background

22.    On January 21, 2020, the Center for Disease Control and Prevention

("CDC") confirmed the first U.S. case of a new coronavirus, also known as COVID-

19.

23.    On January 30, 2020, the World Health Organization ("WHO")

declared the COVID-19 outbreak to be a "public health emergency of international

concern."

24.    On March 11, 2020, the WHO declared that the spread of COVID-19

had become a pandemic.

25.    On March 13, 2020, President Trump issued the Coronavirus Disease

2019 (COVID-19) Emergency Declaration applicable to the United States, which

declared that the pandemic was of "sufficient severity and magnitude to warrant an

emergency declaration for all states, territories and the District of Columbia."

26.    The Administration expressly recognized that with the COVID-19

emergency, "many small businesses nationwide are experiencing economic hardship

as a direct result of the Federal, State, and local public health measures that are being taken to minimize the public's exposure to the virus." *See Business Loan Program Temporary Changes; Paycheck Protection Program*, 13 CFR Part 120, Interim Final Rule (the "SBA PPP Final Rule").

27.    On March 25, 2020, in response to the economic damage caused by the COVID-19 crisis, the United States Senate passed the Coronavirus Aid, Relief, and Economic Security Act, the CARES Act (P.L. 116-136). The CARES Act was passed by the House of Representatives the following day and signed into law by President Trump on March 27, 2020. This legislation included $377 billion in federally-funded loans to small businesses and a $500 billion governmental lending program, administered by the United States Department of Treasury ("Treasury") and its Small Business Administration ("SBA"), a United States government agency that provides support to entrepreneurs and small businesses.

28.    As part of the CARES Act, the Federal Government created a $349 billion loan program, referred to as the "Paycheck Protection Program" ("PPP"). The PPP provides small businesses with loans to be originated from February 15, 2020, through June 30, 2020.  The PPP was created to provide American small businesses with eight weeks of cash-flow assistance, with a certain percentage forgivable if utilized to retain employees and fund payrolls. The SBA backs the loans.  The loans

are administered by Treasury, backed by the Federal Government, but funded by private lenders ("Lenders"), including banks and financial services firms.

29.    Without the work performed by Plaintiff and Class Members, the CARES Act violates the United States Senate's legislative intent. The Senate requested Treasury to "issue guidance to lenders and agents to ensure that the … loans *prioritizes small business concerns and entities in underserved and rural markets, including veterans and members of the military community, small business concerns owned and controlled by socially and economically disadvantaged individuals…, women, and businesses in operation for less than 2 years*." CARES Act, P.L. 116-136, March 27, 2020, 134 Stat 281 (emphasis added).

30.    On April 1, 2020, Governor Brian Kemp issued an executive Stay at Home Order in the State of Georgia to prevent the spread of COVID-19.

31.    The Treasury announced on April 3, 2020, that small businesses and sole proprietors could apply and receive loans to cover their payroll and other expenses through approved SBA Lenders. Beginning on April 10, 2020, independent contractors and self-employed individuals could apply as well. [1]

32.    On April 24, 2020, President Trump signed the Paycheck Protection Program and Health Care Enhancement Act ("PPPEA"). The PPPEA added $310

---

[1] https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf

billion in PPP funding, bringing the total PPP funds available to lend to $659 billion.

33.     The Treasury's PPP Information Sheet Lenders (the "PPP ISL"), consistent with the SBA PPP Final Rule (collectively, the "SBA Regulations"), provides that Lenders will be compensated for processing fees based on the balance of the financing at the time of final disbursement.   Specifically, the SBA will pay Lenders fees for processing PPP loans in the following amounts:

- Five percent (5%) for loans of not more than $350,000;

- Three percent (3%) for loans of more than $350,000 and less than $2,000,000; and

- One percent (1%) for loans of at least $2,000,000.[2]

34.     The SBA Regulations include not only compensation for Lenders, but also agents.  Under the PPP ISL, "[a]n 'Agent' is an authorized representative and can be:

- An attorney;

- An accountant;

- A consultant;

- Someone who prepares an applicant's application for financial assistance and is employed and compensated by the applicant;

---

[2] https://home.treasury.gov/system/files/136/PPP%20Lender%20Information%20Fact%20Sheet.pdf.

- Someone who assists a lender with originating, disbursing, servicing, liquidating, or litigating SBA loans;

- A loan broker; or

- Any other individual or entity representing an applicant by conducting business with the SBA."[3]

35.    Additionally, the SBA Regulations provide that "Agent fees **will** be paid out of lender fees. The lender ***will*** pay the agent. ***Agents may not collect any fees from the applicant***. The total amount that an agent may collect from the lender for assistance in preparing an application for a PPP"[4] loan is as follows (the "Agent Fees"):

- One percent (1%) for loans of not more than $350,000;

- 0.50% for loans of more than $350,000 and less than $2 million; and

- 0.25% for loans of at least $2 million.

36.    The SBA Regulations establish limits on Agent Fees. The SBA Regulations and Treasury Guidance determined that the Agent Fees set forth above are reasonable given the application requirements and the fees that Lenders receive for making PPP loans.

37.    Within this context, Defendants served as the intermediary between

---

[3] *Id.*

[4] *Id.* (Emphasis added).

small businesses and federal funds. Plaintiff served as the Agent and was an Agent for small businesses applying for the PPP loans to be lent by the Defendants and backed by the full faith and credit of the Federal Government.

38.     Based on information and belief, Defendants received approval from the SBA and funded loans for numerous businesses. However, Defendants failed to pay the required compensation to Plaintiff (the "Agent" and each of the Class Members, an "Agent") that facilitated the loan process between Lenders and applicants as required by the SBA Regulations.

39.     Defendants have either failed and refused to pay at all or refuse to pay the full measure of monies owed to Plaintiff.

### Plaintiff Assists their Clients With Applying for PPP Loans Under the CARES ACT

40.     In late March of 2020, Plaintiff became aware that the CARES Act had been signed into law. Plaintiff, knowing that the COVID-19 crisis would significantly impact its clients' businesses, sought to obtain PPP loans through various Lenders on behalf of its clients.

41.     The CARES Act and the related SBA Regulations, among other things, permits the SBA to guarantee 100% of Section 7(a) loans under the PPP (Section 1102 of the Act) and provides forgiveness of up to the full principal amount of qualifying loans guaranteed under the PPP (Section 1106 of the Act).

12

42.     Shortly after the CARES Act came into law, Plaintiff began assisting its clients in the gathering and analysis of their documents, as well as the calculation and preparation of loan applications.

43.     Based on the SBA Regulations, Plaintiff understood that ***it was not allowed to charge their clients a fee*** relating to the application process. The Agents were <u>only</u> permitted to receive compensation from the Agents' share of the $20 billion in fees the Federal Government paid the Lenders for originating the PPP loans.

44.     Plaintiff spent significant time and effort on each application.  To fill out the applications, Plaintiff assisted clients in gathering the required information and filling out the applications, including the following documents, where applicable or necessary:

    a.  Loan Calculator Spreadsheet;

    b.  SBA Form 2483 – Each Owner 20% or more or Officer;

    c.  Addendum A: Affiliates – Each Owner 20% or more must complete;

    d.  Information if the applicant received an SBA Economic Injury Disaster Loan ("EIDL");

    e.  Certificate of Beneficial Ownership Interest – Each Owner 20% or more must complete;

f.  Driver's License for each 20% or more owner;

g.  Articles of Incorporation or Articles of Organization;

h.  2019 IRS/State Payroll Forms:  940 or all four quarterly 941;

i.  2019 Payroll Summary Report by Employee;

j.  2019 Health Insurance Premium Paid – Each monthly statement or year-end summary;

k.  2019 Retirement Matching Plan Paid – Each monthly statement or year-end summary;

l.  2020 1st QTR 941 Form;

m. January 2020 Payroll Summary by Employee;

n.  February 2020 Payroll Summary by Employee;

o.  March 2020 Payroll Summary by Employee;

p.  Health Insurance Premium Paid – January, February, and March 2020;

q.  Retirement Matching Plan Paid – January, February, and March 2020;

r.  Wiring Instruction; and

s.  Copy of most recent bank statement

(collectively, (a) – (s) above are part of the "Application").

45.    Plaintiff believed in good faith that it would receive the Agent Fees

from the Lenders upon funding of each of their clients' loans under the PPP, as required by the SBA Regulations.

46.    Defendants did not comply with the SBA Regulations in distributing PPP Agent Fees to PPP Agents.  Instead, Defendants (a) took the position that they would not and do not pay Agent Fees, (b) refused to remit Agent Fees upon demand, (c) remitted only a fraction of the mandated PPP Agent Fees that were actually due, and/or (d) effectively denied payment of PPP Agent Fees by making it impossible to indicate that Agent Fees were due, refusing to accept relevant SBA Forms, and/or refusing to allow the applicant to indicate that a PPP Agent assisted the applicant.

47.    As a result of Defendants' unlawful actions, Plaintiff has suffered financial harm by being deprived of the statutorily mandated compensation for the professional services they provided in connection with assisting their clients in applying for and obtaining PPP loans.

**Class Action Certification**

48.    As noted above, Plaintiff brings this action on behalf of itself and all others similarly situated as a state and nationwide Class, defined below.

49.    Plaintiff seeks to represent a Class composed of and defined as follows:

a. All Agents as that term is defined by the SBA Regulations that facilitated small businesses to receive a loan under the PPP, *i.e.*, met

the criteria for eligibility and were not otherwise ineligible, between February 15, 2020, and June 30, 2020, who timely applied for a PPP loan through various Lenders and were processed and approved for funding.

50.    Plaintiff reserves the right to expand, limit, modify, or amend this Class definition, including the addition of one or more subclasses, in connection with Plaintiff's motion for class certification, or any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

51.    *Numerosity:* The Class is composed of thousands of Agents (the "Class Members"), whose joinder in this action would be impracticable. The disposition of their claims through this class action will benefit all Class Members, the parties, and the courts.

52.    *Commonality:* There is a commonality in questions of law and fact affecting the Class. These questions of law and fact predominate over individual questions affecting individual Class Members, including, but not limited to, the following:

a.    Whether Defendants complied with all applicable SBA Regulations in processing Applications for PPP funds and in distributing PPP funds;

b.    Whether Defendants complied with their legal obligations under the

16

terms of the CARES Act as a lender of the PPP funds;

c. Whether Defendants were required to pay PPP Agent Fees to the Plaintiff and Class Members under the CARES Act and SBA Regulations;

d. Whether Defendants failed to compensate Agents who facilitated PPP loans;

e. Whether Defendants have a policy and/or practice of failing to compensate Agents who facilitated PPP loans to the detriment of the Class;

f. Whether Defendants prioritized their own origination fees over abiding by the CARES Act, SBA Regulations, and PPP specifications;

g. Whether Defendants' conduct constitute an "unfair business practice" under the Georgia Fair Business Practices Act, Ga. Code Ann. § 10-1-390, *et seq.* (question for purposes of notice only);

h. Whether Defendants possess exclusive knowledge of material facts, with respect to the Application process, *i.e.*, that the Agents were not receiving compensation when assisting applicants with PPP loan process and which Agents were not compensated;

i. Whether Defendants actively concealed a material fact or facts from the

Plaintiff, *i.e.*, that the Agents were not going to receive their earned fees from assisting with the Applications;

j.  Whether Defendants' conduct, as alleged herein, was intentional and knowing;

k.  Whether the Defendants converted Plaintiff's and Class Members' PPP Agent Fees;

l.  Whether the Defendants were unjustly enrichment by failing to pay the Plaintiff and Class Members the PPA Agent Fees required by law;

m.  Whether Class Members are entitled to damages and/or restitution, and if so, what is the amount of revenues and/or profits Defendants received and/or was lost by Class Members as a result of the conduct alleged herein;

n.  Whether Defendants are likely to continue to mislead the public and Class Members and continue to violate SBA Regulations regarding paying Agent their earned fees under the CARES Act;

o.  Whether Plaintiff and Class Members are entitled to an award of reasonable attorney's fees, pre-judgment interest and costs of suit; and

p.  Whether Plaintiff and Class Members are entitled to punitive damages as a result of Defendants' conduct.

53.    *Superiority*: In engaging in the conduct described herein, Defendants have acted and failed to act on grounds generally applicable to Plaintiff and other Class Members. Such conduct requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members. A class action is superior to all other available means for the fair and efficient adjudication of Plaintiff's and the Class Members' claims. Few, if any, Class Members could afford to seek legal redress of the wrongs complained herein on an individual basis. Absent class action, Class Members and the general public would not likely recover, or have the chance to recover, damages or restitution, and Defendants would be permitted to retain the proceeds of their misdeeds.

54.    *Typicality*: Plaintiff's claims are typical of, and are not antagonistic to, the claims of all Class Members. Plaintiff and the Class Members have all been deceived by Defendants' unfair and unlawful PPP loan application and funding practices, as alleged herein. The factual and legal basis of Defendants' liability to Plaintiff and each Class Member as a result of Defendants' actions are described herein.

55.    *Adequacy*: Plaintiff is an adequate representative of the Class because it is a member of the Class, and Plaintiff's interests do not conflict with the interests of the other Class Members that Plaintiff seeks to represent. Plaintiff will fairly and

adequately represent and protect the interests of the other Class Members. Plaintiff has retained counsel with substantial experience in litigating complex cases, including consumer fraud and class actions.  Both Plaintiff and its counsel will vigorously prosecute this action on behalf of the Class and have the financial ability to do so. Neither Plaintiff nor counsel have any interest adverse to other Class Members.

56.    *Ascertainability*: Plaintiff is informed and believes that Defendants keep extensive computerized records of their loan applications through, *inter alia*, computerized loan application systems, and Federally-mandated record-keeping practices. Defendants have one or more databases through which all of the borrowers may be identified and ascertained, and it maintains contact information, including email and mailing addresses.  From this information, the existence of the Class Members (*i.e.*, the Agent for the borrower) can be determined, and thereafter, a notice of this action can be disseminated in accordance with due process requirements.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Declaratory Relief

*(On Behalf of the Class Against All Defendants)*

57.    Plaintiff hereby incorporates by reference the foregoing allegations as

if fully set forth herein.

58.    Plaintiff asserts this cause of action on behalf of itself and other Class Members.

59.    Plaintiff assisted its clients with the application process. Defendants failed to pay Agent Fees owed to Plaintiff as required by the SBA Regulations. Instead, they kept all of the origination and processing fees for themselves, in direct violation of the SBA Regulations.

60.    An actual controversy has arisen between Plaintiff and Defendants as to the Agent Fees owed to Plaintiff by Defendants. Upon information and belief, Defendants either deny that any Agent Fees are owed to Plaintiff or claim that only a fraction of the proper Agent Fees are owed.

61.    Plaintiff and the Class Members seek a declaration in accordance with SBA Regulations that that Defendants owe the Agent Fees to be paid out of the administrative fees paid to all Defendants, and that the collective Agent Fees should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

*(On Behalf of the Class Against All Defendants)*

62.    Plaintiff hereby incorporates by reference the foregoing allegations as

if fully set forth herein.

63.    Plaintiff asserts this cause of action on behalf of itself and other Class Members.

64.    Plaintiff and Defendants did not have a legal contract but the Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiffs and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

65.    Plaintiff and Class Members conferred a benefit upon Defendants by serving as the Agent for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required by the SBA Regulations.

66.    Defendants have been, and continue to be unjustly enriched, to the detriment and at the expense of the Class Members as a result of Defendants' wrongful withholding of Agent Fees owed to Plaintiff and the Class.

67.    Defendants have unjustly benefitted through the unlawful and wrongful

collection of money from the Federal Government through the SBA funding PPP loan applications and continue to benefit to the detriment and at the expense of Plaintiff and Class Members by failing to remit that portion of the money collected that belongs to Plaintiff and Class members in the form of PPP Agent Fees.

68.     Accordingly, Defendants should not be allowed to retain the proceeds from the benefits conferred upon it by Plaintiff.  Equity requires that the Defendants remit the PPP Agent Fees to Plaintiffs and Class Members and that they be compensated for the benefit conferred on the Defendants by Plaintiff and Class Members.

69.     Therefore, Plaintiff seeks disgorgement of Defendants' unjustly acquired profits and other monetary benefits resulting from Defendants' unlawful conduct, and seek restitution for the benefit of the Plaintiff and Class Members, in a manner to be determined by the Court.

## THIRD CAUSE OF ACTION
### Conversion

*(On Behalf of the Class Against All Defendants)*

70.     Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

71.     Plaintiff asserts this cause of action on behalf of itself and other Class Members.

72.     Plaintiff gained title in the property and/or the legal right of possession to the PPP Agent Fees upon approval and funding of the PPP loan, based on their assistance to their clients with, and facilitation of, the loan application process, as Agents.

73.     Defendants without legal claim, authorization, or approval appropriated, assumed, and exercised dominion over, the Plaintiff's and Class Members' PPP Agent Fees set out above.   Defendants continue to have actual possession of the PPP Agent Fees.

74.     Plaintiff has demanded the return of their Agent Fees, which Defendants have not, or have refused to do.

75.     Defendants converted Plaintiff's property for their own use and used Plaintiff's property to their own benefit and enrichment. Defendants' actions with respect to the PPP Fees are hostile to Plaintiff and Class Members ownership rights in the PPP Agent Fees and Defendants' interference with Plaintiff's and Class Members' dominion and ownership over the PPP Agent Fees has proximately damaged Plaintiffs and Class Members.

76.     In the alternative, Defendants in their capacity as trustees and/or bailees of Plaintiff's Agent Fees have not, or have refused to, surrender or remit the Agent Fees to Plaintiff.  The PPP Agent Fees rightfully and lawfully belong to Plaintiff and

the Class Members

77.    Accordingly, Defendants are liable to Plaintiff for the tort of conversion.

78.    As a direct and proximate result of Defendants' actions, Plaintiff has suffered financial injury in an amount to be proven at trial.

79.    Defendants have acted in bad faith and have caused Plaintiff unnecessary trouble and expense by failing to abide by the rule of law, including the CARES Act and SBA Regulations requiring payment of the PPP Agent Fees. Accordingly, pursuant to O.C.G.A. § 13-6-11, Plaintiff is entitled to recovery of their litigation expenses, including but not limited to their reasonable attorneys' fees.

80.    Defendants' actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care, which would raise the presumption of conscious indifference to consequences, entitling Plaintiff to an award of punitive damages.

### FOURTH CAUSE OF ACTION
### Quantum Meruit

*(On Behalf of the Class Against All Defendants)*

81.    Plaintiff incorporate by reference the foregoing allegations as if fully set forth herein.

82.    Plaintiff asserts this cause of action on behalf of itself and other Class

Members.

83.    Plaintiff and Class Members performed valuable service for the Defendants, including but not limited to, serving as the Agents for the small businesses applying for the PPP loans to be lent by the Defendants and by facilitating the loan process between Lenders and applicants as required and encouraged by the SBA Regulations.

84.    Plaintiff, in fact, expected that Defendants would pay them the Agent Fees for the costs and services incurred in preparing and submitted the loan applications upon approval or at least funding of the loan funding of each of their clients' loans under the CARES Act and PPP, as required by the SBA Regulations. Plaintiff and Class Members operated under the assumption that Defendants would follow the CARES Act and SBA Regulations and remit payment of the PPP Agent Fees as required by law.  Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiffs and Class Members reasonably expected and relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.

85.    The Defendants requested the assistance of Plaintiff, or knowingly accepted Plaintiff's and Class Members service, including but not limited to,

26

working with the Agents during the application process.

86.    Defendants' receipt and retention of the Agent Fees without compensating Plaintiff and Class Members would be unjust and contrary to law, including the CARES Act, PPP, and SBA Regulations.

87.    The Plaintiff is thus entitled to recover from Defendants the Agent Fees that are due to them under the law, including the CARES Act, PPP, and SBA Regulations.

**\*\*\*NOTICE ONLY OF\*\*\***
**FIFTH CAUSE OF ACTION**
**Violation of Georgia's Fair Business Practices Act**
**(Ga. Code Ann. § 10-1-390, *et seq*.)**

*(On Behalf of the Class Against All Defendants)*

88.    Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

89.    Plaintiff plans to asserts this cause of action on behalf of itself and other Class Members after the requisite notice period has lapsed.

90.    Plaintiff intends to assert a claim under the Georgia Fair Business Practices Act ("Georgia FBPA"), which declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful.  See O.C.G.A. § 10-1-393(a), O.C.G.A. § 10-1-

393(b).

91.     Plaintiff will make a demand in satisfaction of O.C.G.A. § 10-1-399, and they may amend this Complaint to assert claims under the Georgia FBPA once the required 30 days have elapsed.

92.     This cause of action is included for purposes of notice only and is not intended to actually assert a claim under the Georgia FBPA.

93.     Defendants are each a "person" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(24).

94.     Defendants were, at all times material to the allegations herein, engaged in "trade or commerce" as defined by the Georgia FBPA.  O.C.G.A. § 10-1-392(a)(28).

95.     Although there are enumerated examples in the statute of acts or practices that are unfair or deceptive, the examples are provided "by way of illustration only[.]" O.C.G.A. § 10-1-393(a); O.C.G.A. § 10-1-393(b).

96.     Defendants were, at all times material to the allegations herein, engaged in "consumer acts or practices" as defined by the Georgia FBPA because the PPP loans, the SBA Regulations, and the Defendants' lending under the CARES Act and PPP program were all "acts or practices intended to encourage consumer transactions" by ensuring business remained afloat and keeping consumers

employed. O.C.G.A. § 10-1-392(a)(7). The purpose of this part shall be *to protect* consumers and *legitimate business enterprises* from unfair or deceptive practices in the conduct of any trade or commerce in part or wholly in the state. It is the intent of the [Georgia] General Assembly that such practices be swiftly stopped, and [the Georgia FBPA] shall be liberally construed and applied to promote its underlying purposes and policies." O.C.G.A. § 10-1-391.

97.    Defendants have violated the Georgia FBPA by undermining the Application process and the Agent Fees payment requirements.

98.    Defendants held themselves out as offering PPP loans under the CARES Act and SBA Regulations and Plaintiff and Class Members were induced and encouraged to act as Agents for Defendants' loans.  Plaintiffs and Class Members reasonably expected and reasonably relied on Defendant operating within the law governing the loans requiring payment of the PPP Agent Fees.  Defendants in fact did not comply with the CARES Act and SBA Regulations.

99.    Defendants engaged in lending to businesses under the CARES Act and PPP program and thus were required to abide by obligations set forth in the SBA Regulations.

100.    Plaintiff, as well as all Class Members, engaged in helping clients apply for PPP loans with the understanding, which is consistent with the SBA Regulations,

that while they were not permitted to charge their clients fees for their professional services in assisting in compiling the Applications, they would be compensated through the mandated Agent Fees from the Lenders.

101. Defendants are well aware, or should have been well aware, of the mandated Agent Fees owed to the Agents under the SBA Regulations.

102. Defendants knew or should have known, that many of their customers were not sophisticated enough and/or lacked the necessary accounting skills and/or did not maintain the required financial data, to be able to successfully apply for a PPP loan without the assistance of a Plaintiff and the Class Members.

103. Defendants also knew or should have known, that their customers would seek the assistance, and in fact, did seek the assistance of PPP Agents like Plaintiff and the Class Members to assist them in applying for PPP loans with Defendants.

104. Based on the assistance from the PPP Agents like Plaintiff and the Class Members, the loan customers successfully applied for PPP Loans with their lenders, which were guaranteed by the SBA.

105. As a result of these PPP loans, the SBA has paid the Defendants the processing fees that are owed to PPP lenders. These processing fees include the fees that are due and owing to PPP Agents, including Plaintiff and the Class Members,

for their services.

106.    The Defendants obtained the services of and benefits provided by the Plaintiff to the Defendants' customers. As a result, Defendants have earned substantial PPP loan processing fees, but have refused to compensate the Plaintiff and Class the PPP Agent Fees as mandated by the SBA Regulations. Therefore, Defendants' refusal is an unfair and deceptive consumer act or practice.

107.    Through their unfair acts and practices, Defendants have improperly obtained fees from the Federal government at the expense of Plaintiff and the Class.

108.    Defendants' unfair practices occurred before and during the Application process when Plaintiff rendered services to its clients in anticipation of being paid the mandated Agent Fees by the Lenders, only to be denied all or a portion of the Agent Fees owed under the SBA Regulations.

109.    Defendants' unfair practices of refusing to pay the mandated Agent Fees and their failure to adhere to the SBA Regulations as to PPP loans are the proximate cause of Plaintiff's damages.

110.    These acts and practices were unfair because Defendants withheld monies owed to Plaintiff that were provided for pursuant to the SBA Regulations.

111.    By committing the acts and practices alleged above, Defendants engaged in unfair business practices within the meaning of O.C.G.A. § 10-1-393.

112.   Defendants' violations present a continuing risk to Plaintiff as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest in light of the purpose and nature of the PPP Loans and because the CARES Act expressly authorized the PPP loans for the benefit of the public, including Plaintiff.

113.   Plaintiff and the Class Members are entitled to equitable relief.

114.   Thus, pursuant to O.C.G.A. § 10-1-399, Plaintiff seeks that this Court cause Defendants to disgorge this money to Plaintiff and all Class Members, enjoin Defendants from continuing to violate the Georgia FBPA as discussed herein, and further order actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law, along with an award to Plaintiff of such other damages and relief this Court deems just and proper.

115.   Plaintiff, the Class, and members of the public will be harmed and/or denied an effective and complete remedy if such an order is not granted.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for the following relief:

1.     For an Order certifying the Class as defined above, appointing Plaintiff

as Class representative for the Class, and appointing Plaintiff's counsel as Class counsel for the Class;

2.    For an Order declaring Defendants' actions to be unlawful;

3.    For a declaration in accordance with SBA guidance that approximately 19.14% of all administrative fees paid to all Defendants, should be deposited into a mutually agreeable fund or funds, within 60 days, to be distributed to the designee/Agent of each recipient of a PPP loan;

4.    For equitable relief to Plaintiff and Class Members;

5.    For an award of all recoverable compensatory, statutory, and other damages sustained by Plaintiff and Class Members, and equitable relief including disgorgement, unjust enrichment, and all other available relief under applicable law;

6.    For an award of punitive damages pursuant to applicable law;

7.    For reasonable attorneys' fees and expenses as permitted by applicable statutes and law;

8.    For costs related to bringing this action;

9.    For pre and post-judgment interest as allowed by law; and

10.   Such further relief at law or in equity that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial of its claims by a jury to the extent authorized by law.

DATED:  May 11, 2020               */s/ James F. McDonough, III*
                                   James F. McDonough, III
                                        GA Bar No.:  117088
                                        jmcdonough@hgdlawfirm.com
                                   **HENINGER GARRISON DAVIS, LLC**
                                   3621 Vinings Slope, Suite 4320
                                   Atlanta, GA 30339
                                   Telephone: 404-996-0869
                                   Facsimile: 205-326-3332

                                   W. Lewis Garrison, Jr.
                                        GA Bar No.: 286815
                                        lewis@hgdlawfirm.com
                                   2224 1st Avenue North
                                   Birmingham, Alabama 35203
                                   Telephone:  (205) 326-3336
                                   Facsimile:   (205) 326-3332

                                   **GERAGOS & GERAGOS, APC**

                                   Mark J. Geragos
                                   Ben J. Meiselas
                                   Matthew M. Hoesly
                                   644 South Figueroa Street
                                   Los Angeles, California 90017
                                   Telephone: (213) 625-3900
                                   Facsimile: (213) 232-3255
                                   *Pro Hac Vice Application in Process*

**GRAYLAW GROUP, INC.**

Michael E. Adler
26500 Agoura Road, #102-127
Calabasas, CA 91302
Telephone: (818) 532-2833
Facsimile: (818) 532-2834
*Pro Hac Vice Application in Process*


**DHILLON LAW GROUP INC.**

Harmeet K. Dhillon
Nitoj P. Singh
177 Post St., Suite 700
San Francisco, CA 94108
Telephone: (415) 433-1700
Facsimile: (415) 520-6593
*Pro Hac Vice Application in Process*

*Attorneys for Plaintiff and the
Proposed Class*

## <u>LOCAL RULE 7.1 COMPLIANCE CERTIFICATE</u>

Pursuant to L.R. 7.1.D, this certifies that the foregoing document complies with the font and point selections approved by L.R. 5.1.C. The foregoing document was prepared using Times New Roman font in 14 point.


Dated: <u>May 11, 2020</u>.

*/s/ James F. McDonough, III.*
James F. McDonough, III (GA Bar No. 117088)
**Heninger Garrison Davis, LLC**
3621 Vinings Slope, Suite 4320
Atlanta, Georgia 30339
P: (404) 996-0860
F: (205) 380-8076
jmcdonough@hgdlawfirm.com
